WILSON & a. v. SCHOOL DISTRICT NO. 4, IN CHESTER.

The powers of a building committee are limited to the amount voted by the district, and they cannot bind the district by any contract beyond that amount.

A ratification of the acts of the committee in building a more expensive house, cannot be inferred from the mere fact that the district school is kept in it for a few weeks immediately after it is finished, there being no evidence that the district had any knowledge of the amount expended, or had taken any action on the subject.

The boundary of a district is well established by a reference to its boundaries, on a former division of the town into districts, though there might be defects in the records of the former town meeting.

In an action for services no notice is required before commencing an action.

IN ASSUMPSIT, the auditor reported the following facts. At a meeting of the district, duly warned and held July 3, 1850, it was " voted to build a new school house." " Voted to raise the sum of three hundred dollars to build a new school house." " Chose Asa Wilson, George Everett and Edmund Sleeper, (the

plaintiffs,) committee." A lot was purchased for the school house, for which the committee, by vote of the district, paid ten dollars. Upon this lot the committee caused a new school house to be built. The school house was, in the main, well built, of modern style, and suitable for the district, and the expenses incurred were reasonable for such a house as they built.

The claim of the plaintiffs is for money paid out, debts incurred, and services rendered by them in purchasing the land and building the school house.

The bills for labor, materials, &c., upon the house, amounted to $464.76 ; and the committee received of the town treasurer $150, and for the old school house, &c., $38.22 ; in all, $178.22.

These bills were all paid before January 1, 1851, the date of the writ, except the sum of $227.55, paid January 15, 1851, to M. & L. W. Hall, who contracted to erect the building — in part upon their contract, and in part for extra work, and $4.68 paid to others for labor. The house was completed about November 12, 1850. The committee settled with the Halls November 25, 1850 ; " and the committee then agreed to pay them the balance due them, and offered to give them their note ; but the Halls said they had as lief have their word as their note, and no note was given."

To show that School District No. 4 was a legally constituted district, the plaintiffs offered the records of Chester for the year 1826. It was objected that the return of the selectmen does not state on what day the warrants for the meeting were posted, but only that they were posted up more than fifteen days before the day of meeting. It does not appear that the selectmen who issued the warrant, or the clerk who made the records, was sworn as prescribed by law. The record of one of the warrants is not certified to be a true copy, nor the report of the committee, and it is not stated in express terms that the whole territory was divided into school districts.

After the division of the town, and the incorporation of Auburn, in 1845, a committee was appointed to divide the town

into school districts; and at the annual meeting, March 10, 1846, it was voted to accept the report of the committee, and that it be adopted and recorded. That report recommended that the old boundary lines of District No. 4, as they then existed, be adopted as the boundary lines of that district, and that the district be called No. 4. The old boundary lines of No. 4 were those established in 1826.

All the schools in the district have been kept in said school house, and all the school meetings of the district have been held in it since it was completed. The first school kept in it commenced about November 13, 1850, and continued two or three months, until the money of the district was expended.

*D. & D. J. Clark,* for the plaintiffs.

The district was properly constituted, as appears by the town records. The plea of the general issue admits this. Story's Pleadings, Tit. Ab., p. 73; *School District* v. *Blaisdell,* 6 N. H. 197; 1 Chit. Pl. 474; *School District* v. *Bragdon,* 3 Fost. 507.

The plaintiffs claim the amount in their specification, because if the committee were not duly appointed at a legal meeting, the subsequent proceedings of the district amount to a ratification of their acts. *Thayer* v. *Boston,* 19 Pick. 511.

2. Because if the plaintiffs were not an acknowledged committee for the district, the house would belong to the plaintiffs; and if the defendants accepted the same of the plaintiffs, by such acceptance they would be bound to pay the value of the same. Angell & Ames on Corp., chap. 11, § 5, p. 383, and cases there cited.

3. Because " the building committee caused the school house to be built upon the lot of land laid out by the district, and that said house was in the main well built, of modern style, and suitable for the district, and the expenses incurred were reasonable." The district have used and occupied the same as their own, and it would be unreasonable, and against sound policy, to deprive the plaintiffs of their just and honest due.

If the declaration in the writ is insufficient, it may be amended by leave of the court.

*Pillsbury*, for the defendants.

1. Twelve of the items of the plaintiffs' specification, all for money paid, bear date since the date of the writ, and cannot be embraced in this suit.

2. The plaintiffs were merely agents of the district, to expend the money *when received. Staples* v. *French*, 10 N. H. 72.

3. The plaintiffs could not legally expend more money than $328.22, being the amount of $300 voted by the district, and $28.22 proceeds of the sale of the old house. It was a fraud on their part, without the assent or knowledge of the defendants to expend more, and call upon them to pay the excess. If they could expend $100 more, they might $300. *Keyes* v. *Westford*, 17 Pick. 273 ; *Davis* v. *School District*, 24 Maine 349 ; *Harris* v. *School District*, 8 Fost. 58 ; 9 N. H. 266.

Three items, as stated by the auditor, amounting to $232.23, did not accrue till January 15, 1851, and cannot be recovered in this suit. 12 N. H. 64. The residue of the claim, $232.53, after deducting the credits, leaves a balance of $54.31, and this is all they can recover in this suit, if any thing.

4. The settlement or conversation between the plaintiffs and the Halls, November 25, 1850, does not amount to a payment of their claim, nor give the plaintiff a right of action against the district, before the actual payment was made, January 15, following. *Jaffrey* v. *Cornish*, 10 N. H. 505.

5. The plaintiffs cannot recover on the ground that the district has ratified or accepted their doings. They expended upon the house about $178, money of the district. The district, therefore, had an interest in it, and must occupy, or lose that sum. The case is different from what it would be if the district had not been thus interested before they occupied it. The only occupation of the house before the suit was by one school, for six or seven weeks, and that cannot be construed, under the circumstances, into a general ratification of the plaintiffs' acts.

For when the defendants took possession of the house, they had a right to presume it had been built for the sum voted by the district. Such occupancy cannot be construed a ratification or implied promise to pay the excess of expenditure, of which the defendants had no knowledge till the suit. 24 Maine 349 ; 2 Cush. 419 ; 14 Mass. 285 ; *French* v. *Congregational Society,* Merrimack, July, 1848. No act of theirs can amount to a ratification, unless the plaintiffs show that the district did those acts with a full knowledge that the plaintiffs had exceeded their authority. The report does not show such knowledge. *Steam N. Co.* v. *Dandridge,* 8 G. & J. 323 ; *Bell* v. *Cunningham,* 3 Pet. 69.

Occupancy since the date of the writ is not competent evidence. 14 N. H. 304 ; 3 Fost. 515.

6. If the plaintiffs take the ground that the district has ratified their doings, the burden is on them to show that it is a legal corporation, capable of ratifying. *Allen* v. *School District,* 15 Pick. 35. In a suit brought by a district, the general issue admits the plaintiffs are a corporation. The case here is different.

7. The plaintiffs being the agent of the district, the claims of all persons, who, at their request, performed services or found materials for the house, were, in the absence of any special contract, against the district, and not against the committee ; and the plaintiffs, being under no legal liability, could not, by their voluntary act, pay those claims and recover of the district.

The auditor's report does not show that the plaintiffs made any contract, binding on themselves personally, but it shows that all bills were made out against the district. The written contract was in terms " for the district." 6 Vt. 76 ; 15 Pick. 39 ; *Allen* v. *District,* 15 N. H. 360 ; 11 Pick. 318 ; 12 N. H. 64.

8. Plaintiffs were bound to aver and prove notice to the defendants of their claims, before suit. They were not bound to expend their own money. They made contracts on the credit of the district. Without notice the defendants could not know that the plaintiffs paid their own money, and had a right to

presume the debts remained outstanding against the district. Paying their own money was a voluntary act, known to them, but not to the defendants. Hard. 42 ; 3 Fost. 491 ; 6 N. H. 495 ; Oliver's Prec. 62 ; *Fitts* v. *Hoit*, Rockingham, December, 1845.

9. Plaintiffs cannot recover in a joint action for labor performed, money paid, or materials found by them severally, nor can they pay each other, and then maintain such action. *Geer* v. *School District*, 6 Vt. 76.

BELL, J. The main question raised by this case was considered and decided in the case of *Harris* v. *School District No. 10, in Canaan*, (8 Fost. 58.) It was there held that the discretion to determine what sum was necessary and proper to be raised by the district for the purpose of building and repairing school houses, was by law vested in the district, and not in the building committee ; that the votes passed by the district relative to building or repairing a school house, at a school meeting, are to be considered and construed together, and the powers of the building committee are limited to the amount appropriated by the district for the purpose, and that the committee have no powers to bind the district beyond the amount so limited. In the present case the amount voted to be raised, and the proceeds of the old school house, which they were directed to sell, amounted to $327.62, and beyond that amount the committee had no power to bind the district. It seems they have expended $464.14, exceeding the amount they were authorized by the district to expend, by $136.52. Of the money voted to be raised, $150 has not been paid to the committee, and as to this there is no question of the right of the plaintiffs to recover in some form ; since we do not understand that any serious question is raised in relation to the fact of their election to be the building committee of the district, or as to the fact that the whole amount voted to be expended has been applied to the building of the district school house. The controversy turns as to that upon other points.

It is contended by the plaintiffs, that notwithstanding the principles settled in *Harris* v. *School District*, they are entitled to maintain their action for the whole amount of their expenditures, because they allege that the district have accepted the school house, and ratified and approved the increased expenditure. It is clear that if this position is supported by the facts of the case, it constitutes a good ground of recovery. A ratification is equivalent to a previous request or authority. The report finds that the school house was in the main well built, of modern style, and suitable for the district, and the expenses incurred were reasonable for such a house as they built. The expenditure, we may fairly infer, was beneficial to the district. Under such circumstances, few persons would be inclined to require very strong evidence to satisfy them of the assent and approval of the district, if the evidence tended all one way. But still such assent is a fact to be proved. It cannot be assumed.

The only facts reported bearing upon the question are thus stated : " All the schools of that district have been kept in that school house, and all the school meetings of the district have been held therein since the same was completed. The first school kept therein commenced about November 13, 1850, and continued two or three months, until the money of the district was expended."

The question upon this point of the case is, whether these facts, standing alone, or connected with the fact that this action was commenced on the first day of January, 1851, prove the assent and ratification of the district of the acts of the committee. If these facts alone are competent, they are sufficient, if uncontradicted, to prove such ratification.

The most common cases where questions arise as to the effect of acceptance and approval of acts done by others, are the cases of work done by contract, where the attempt is to resist payment of a full price, because of the defective character of the materials or workmanship. The general rule undoubtedly is, that if a party receives, without objection, an article made for him by

contract, having a reasonable opportunity to examine and know whether it is conformable to the contract, this is evidence that the party accepts it as a performance of his contract, and if so accepted the party is bound.

The evidence results from the union of three circumstances : the voluntary receipt, the absence of objection, and the knowledge or opportunity to know the defects.   The rule by no means applies equally in all classes of cases.   It hardly applies, or with slight force, in cases where the party has no option to receive or reject the labor or service performed ; where he has no means, or such as are imperfect, to know the defects or objections, or where he declares his objections, thus negativing any assent.   Whenever the service performed is done upon the property of the employer, and cannot be separated, the owner has no power to reject, or refuse to receive it.   A man, who receives back his horse from a farrier, furnishes no evidence that the animal has been properly shod, or that he is satisfied with the work.   If he knows, and does not object, these facts together are evidence of acquiescence.

In most cases where work and labor is performed upon real estate by contract, the mere fact that the owner makes use of the building, or structure built upon his land, furnishes no evidence of approval or acceptance, because he has no choice to reject it.   He cannot remove it from his premises without greatly injuring or destroying its value.   The builder cannot remove it, so as to render it useful to himself.   The property has vested in the owner of the land, and he cannot divest himself of it, except by the assent of others ; and in the case of buildings erected upon his own land, for his own use, he has no choice but to use them as they are, whether they are satisfactory or otherwise.

Alone, the use of such buildings gives no evidence of acceptance.   Accompanied by silence, and the absence of complaint, where to complain would be natural and suitable, or by any circumstance indicating acquiescence, it would be evidence.

In the present case the proof is, at the most, confined to mere use, so far as the facts are found by the report ; that use

continued but a short time, and followed by a suit, indicating the refusal of the district to accept or pay, and that cannot be deemed evidence of acceptance. The building was erected on land of the district, and in part, at least, with their money. They had the right, of which they could not alone divest themselves, to use it, and they were, to some extent, under a necessity of using it.

If a school district were a person, an individual, the evidence would be incompetent to prove assent, unless accompanied by silence, or the absence of any complaint. But school districts are quasi corporations, of very limited powers ; capable of acting in two ways, and of binding themselves in no other way ; that is, by their votes at meetings of the district, warned and holden according to law ; and by their agents, duly appointed and authorized. It is not suggested here that there has been any vote of the district allowing this claim, or in any way ratifying the acts of the committee, in any thing they have done beyond the amount of the means voted by the district. If they are bound, it is by the acts of agents, or members of the district, having competent powers to bind them by their action.

The ordinary agents of a district are the building committee, such as the plaintiffs are in this case ; and the prudential committee. The moderator and clerk are officers, whose powers are confined to the meetings of the district. In the use made of the building erected by the plaintiffs, the prudential committee is the only agent of the district who is regarded by the law as having any concern. It is his duty to provide a place for the school, a teacher, fuel, and other necessaries. It is his business to direct where the school shall be kept, and when. But the prudential committee, as to most of his duties, can hardly be regarded as the agent of the district. He is a public officer, whom the district have a right to choose, if they proceed in due season and in conformity to the laws ; but who may be equally well appointed by the selectmen of the town, if the district neglect to choose ; but his powers are in general derived exclusively from the law. They are not conferred by the dis-

trict; they cannot be revoked by it, nor diminished, nor controlled by it in any way. He may be removed from office, but while he remains in place his powers and duties are governed only by the law. It is essential to every agency that it is revocable by the party who creates it. And this furnishes a decisive test that in his action as committee he acts by virtue of his official powers, and not by virtue of any delegation of authority by the district. *School District* v. *Randall*, 7 Cush. 478.

If the prudential committee should be regarded as an agent of the district, he is not a general agent. His powers are confined within brief limits, and beyond them he is without authority, and cannot bind the district. And there is no pretence that as such agent he has any power to act in relation to the rebuilding or repairing of the school-house by the building committee, which is the subject of this suit.

The keeping of the district school in the school-house erected by the plaintiffs, was the act of the prudential committee, and such an act, in a suitable case, might bind him, yet it could not bind the district. He was bound to provide a place for the school, but the district could exercise no control over his action in this respect, and were therefore not affected by it. This question, though new here so far as we are aware, has been the subject of decisions in Massachusetts and Maine, where it was held that the keeping of a school by the prudential committee does not affect the rights of the district, nor amount to an agreement to pay for the house. *Kingman* v. *School District*, 2 Cush. 425 ; *Davis* v. *School District*, 24 Maine 349.

The acts of the scholars in attending the school kept in the new school-house were the acts of individuals merely, and not of the corporation. Neither parents nor scholars, as such, had any power to bind the district. The case in this respect is like the case of *Taft* v. *Montague*, 14 Mass. 285, where it was held that the acts of travellers, in passing over a road, could have no effect to constitute an acceptance of a bridge erected by contract in a manner alleged to be defective. See *Chaplin* v. *Hill*, 24 Vt. (1 Dean) 528 ; *Lane* v. *School District*, 10 Met. 462.

Though very slight acts of the district may be sufficient, as voting that notices of meetings should be posted on the house, and meetings held there ; *Fisher* v. *School District,* 4 Cush. 294 ; yet they must be the acts of the district itself, or its authorized agents, and not unauthorized acts of its members. *Davis* v. *School District,* 24 Maine 349.

In order to render the use of an article, or the occupation of a building without objection, evidence of acceptance, it is indispensable that the party supposed to accept should have knowledge of the defects of it, or, in a case like this, that the building had been constructed at an expense greatly increased beyond that agreed on or authorized. In this case no such knowledge is shown, and there is force in the suggestion that the defendants had the right to presume that the committee had not exceeded their powers, and that the house had been constructed for the money voted for that purpose. If the fact of a defect or increased outlay was designedly concealed, no one would infer assent or acquiescence in what the party did not even know to exist.

The case of overcharge differs very much from the case of supposed defective workmanship. Where a contractor, or other person, undertakes to erect a building, or furnish an article for a fixed price, there is no ground to presume, from occupation or use, a promise or agreement to pay an increased price, unless the party is shown to be aware of the increased cost, and of the intention to found upon it a claim for the surplus ; because in such case the contractor ordinarily has no claim to any increased pay. He has undertaken the work for a known amount of compensation, and the loss is his own if he either so plans or so performs his work that it cannot be completed for the money. That was substantially the present case. The committee were limited as to price. They had no right to go beyond the limit. If they did, they had no claim for the balance. The district, without notice, had no ground to suppose such over expenditure, or the existence of a claim for increased pay, and no inference could justly be drawn, without such notice, that they assented to

or approved of that expense, or had the slightest intention to pay it. They had no reason to complain, so long as they only knew, if they were even aware of that, that they had a better building than could ordinarily be obtained for the money appropriated.

It does not appear in this case that the use made of the school-house was without objection. This is essential to make the occupation proof of the approval of the district. It is a fact to be proved, and not to be presumed. It is to be proved by the party who asserts it, and not a matter to be disproved by the defendants. Nothing here, unless it be the absence of evidence, tends to show that the district might not be much dissatisfied that nearly fifty per cent. had been added by the committee to the expense of the house, above what the district had voted. The commencement of the plaintiffs' suit within seven weeks after the house was completed, is pretty conclusive evidence that objections were made, and that the district neither approved nor agreed to pay the increased expense.

Objections were made to the organization of the school district, but it seems without foundation. It appears that a district was in fact established in 1826 by a vote of the town, and it had continued a district in fact, with well defined limits, as fixed by the vote of the town, from that date till the division of the town in 1845, when the town appointed a committee to divide the town into school districts, who reported that the old boundary lines of this district, as they then existed, be adopted as the lines of the district in future; and this report was accepted by the town. This vote of acceptance was a sufficient establishment of the district, and the boundary was well defined by the reference to the then recognized lines of the district. These could be made certain by reference to the record of 1826. It was in this view immaterial whether the division of 1826 was made at a .meeting duly warned or otherwise.

It is said the plaintiffs were bound to give notice of their claims to the district, before they were entitled to commence a suit. But it seems to us that if the plaintiffs were entitled to

maintain a general *indebitatus assumpsit*, they were not bound to allege or prove anything more than is usually required in such cases. *Graves* v. *Ticknor*, 6 N. H. 54. Their ground is that they were employed to perform a particular service; they had performed it; and nothing remained but to pay the price or value. In such cases general assumpsit is a proper remedy. *Mitchell* v. *Gile*, 12 N. H. 393.

Objections are made to the declaration, which we have not regarded. If well founded they are not to be reached in this mode. The questions arising upon the auditors' report and the statement of facts therein contained alone are transferred to this court. Objections were made to the specification. The specification originally filed we think gave sufficient notice of the nature of the claim. The defendants could not have been misled, and both parties seemed prepared to try, and to have actually been fully heard upon the merits of the case. Objections in the nature of a special demurrer do not lie to a specification.

*Judgment on report for $150, and interest from date of writ.*